No. 2-09-0959    Filed: 12-8-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re WENDY T., Alleged to be a Person Subject to Involuntary Treatment | ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| | | No. 09--MH--112 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Wendy T., Respondent-Appellant). | ) ) ) ) | Honorable Susan Clancy Boles, Judge, Presiding. |

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Respondent, Wendy T., appeals from the trial court's order authorizing the involuntary administration of psychotropic medication for up to 90 days pursuant to section 2--107.1(a--5)(5) of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2--107.1(a--5)(5) (West 2008)). Respondent contends that (1) the trial court erred in finding that she did not have the capacity to waive counsel; (2) the State failed to prove by clear and convincing evidence that she lacked the capacity to make a reasoned decision whether to take the medication; and (3) the State failed to prove by clear and convincing evidence that she had deteriorated in her ability to function. We affirm.

BACKGROUND

Respondent was admitted to the forensic treatment program at Elgin Mental Health Center (EMHC) in July 2009 after being found unfit to stand trial on criminal charges. Shortly thereafter,

Dr. Mirella Susnjar petitioned the court for authority to involuntarily administer psychotropic medication to respondent for 90 days pursuant to section 2--107.1(a--5)(5) of the Code.

Prior to the hearing on the petition, respondent requested that she be allowed to represent herself in the proceedings. In response to the trial court's questions, respondent stated that she was 42 years old and had a bachelor's degree in journalism and communications. When asked what the purpose of having legal counsel was, respondent stated, "The purpose to have legal counsel is so that a person can communicate to the [j]udge, the [d]efendant's case, and right now, this person is not able to effectively assess what I'm providing." She also stated that she understood she would be subject to involuntary medication if she were to be unsuccessful in defending against the petition. She then requested time to retain private counsel, which the trial court allowed.

At the next hearing, over a month later, respondent informed the trial court that she was unable to retain private counsel. The trial court again inquired into respondent's competency to waive counsel. Respondent acknowledged that she had been found unfit to stand trial in Cook County. She again indicated that she understood that she would be subject to involuntary medication if she were unsuccessful in representing herself. She also stated that the purpose of legal counsel is that counsel "really understands the law in detail." The trial court denied respondent's request to represent herself, finding that she lacked the capacity to waive counsel.

At the hearing on the petition, Dr. Susnjar testified as follows. After examining respondent, she diagnosed respondent as suffering from bipolar disorder, manic with psychotic features. As a result of this illness, respondent had disorganized thinking, which caused her to be unable to execute plans, carry on everyday conversations, accept and process what other people say, or make decisions. She also suffered from paranoia and a distorted view of reality, causing her to be unable to accept

the facts that she had been found unfit to stand trial and that she had been ordered to EMHC. Respondent also denied that she suffered from a mental illness. Dr. Susnjar opined that as a result of her illness, respondent showed a deterioration in her ability to function. Dr. Susnjar based this opinion on the facts that at one point, respondent held a job and was functioning well, but that she now had a lot of legal problems, was unable to work, was found unfit to stand trial, and could not retain her own lawyer. Dr. Susnjar also opined that because of her illness, respondent was suffering. According to Dr. Susnjar, respondent would become angry because she was unable to effectively convey information she wanted to give people, and she was unable to execute simple tasks that the average person could easily perform.

Dr. Susnjar requested authorization to administer numerous medications, including risperidone, Risperidal Consta, olanzapine, and quetiapine. In the alternative, Dr. Susnjar requested authorization to administer haloperidol, fluphenazine, chlorpromazine, benztropine, diphenhydramine, and lorazepam. Dr. Susnjar testified to the benefits and possible side effects of all of the requested medications. Dr. Susnjar gave respondent written information on the risks and benefits of the proposed medications on two separate occasions. Dr. Susnjar opined that due to her mental illness, psychosis, paranoia, and disorganized thinking, respondent did not have the capacity to make a reasoned decision about the benefits and side effects of her treatment. According to Dr. Susnjar, respondent was unable to process the information regarding the medications, because she felt that she did not have a mental illness. During one incident at EMHC when respondent's rights were restricted, Dr. Susnjar administered Haldol, Ativan, and Benadryl to respondent, and respondent responded well to the medications. Alternative services were ineffective and, according

to Dr. Susnjar, would continue to be ineffective until respondent's psychosis was a bit more controlled.

Respondent testified that she refused to take the recommended medication because she had never been on medication or diagnosed with bipolar disorder. She also did not want to take the medication because she suffered from a number of medical conditions including ADHD, a mass on her brain, a blood disorder, and severely painful ovulation. In addition, she had undergone four maxillofacial surgeries, and her mother suffered from breast cancer. She believed that the staff at EMHC tended to overmedicate the patients.

Respondent also testified that the reason she was not working prior to her arrest was that she had recently inherited her aunt's estate and had been busy preparing her aunt's house and condominium for sale.

The trial court found that the State had sustained its burden by clear and convincing evidence, and it authorized the petitioned-for medication. Respondent appealed.

ANALYSIS

Before addressing the merits of defendant's contentions on appeal, we must first address the issue of mootness. This appeal is moot because the 90-day period covered by the trial court's order has already expired. In re Robert S., 213 Ill. 2d 30, 45 (2004). "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." In re J.T., 221 Ill. 2d 338, 349-50 (2006). Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. In re Barbara H., 183 Ill. 2d 482, 491

(1998). Reviewing courts, however, recognize exceptions to the mootness doctrine, such as (1) the public-interest exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties, (2) the capable-of-repetition exception, applicable to cases involving events of short duration that are capable of repetition, yet evading review, and (3) the collateral-consequences exception, applicable where the involuntary treatment order could return to plague the respondent in some future proceedings or could affect other aspects of the respondent's life. In re Alfred H.H., 233 Ill. 2d 345, 355-62 (2009); J.T., 221 Ill. 2d at 350; In re Wathan, 104 Ill. App. 3d 64, 66 (1982).

The collateral-consequences exception applies here. The record does not indicate that respondent has ever before been subject to an order for the involuntary administration of medication. Thus, there are collateral consequences that might plague respondent in the future. Compare In re Meek, 131 Ill. App. 3d 742, 745 (1985) (as the case appeared to be the respondent's first involuntary commitment, court found that the collateral-consequences exception applied), with Alfred H.H., 233 Ill. 2d at 363 (because the respondent had multiple prior involuntary commitments and was a felon, there were no collateral consequences that would stem solely from the present adjudication; every collateral consequence that could be identified already existed as a result of the respondent's previous adjudications and felony conviction). Also, the evidence shows that respondent suffers from a mental illness that cannot be successfully controlled by nonmedicinal methods. Thus, it appears that respondent will very likely be subject to future proceedings and that her past involuntary treatment could adversely affect her at that time. See Alfred H.H., 233 Ill. 2d at 362 (collateral-consequences exception applies where reversal could provide a basis for a motion in limine that would prohibit any mention of the hospitalization during the course of another proceeding).

Turning to the merits, respondent first contends that the trial court erred in finding that she lacked the capacity to waive counsel and represent herself. Section 3--805 of the Code provides:

"Every respondent alleged to be subject to involuntary admission shall be represented by counsel. If the respondent is indigent or an appearance has not been entered on his behalf at the time the matter is set for hearing, the court shall appoint counsel for him. A hearing shall not proceed when a respondent is not represented by counsel unless, after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to make an informed waiver of his right to counsel." 405 ILCS 5/3--805 (West 2008).

Although referring to involuntary admissions, the statute applies with equal force to the involuntary administration of psychotropic medication. Barbara H., 183 Ill. 2d at 493. Before allowing a respondent to waive counsel, the trial court must, at a minimum, inquire into the respondent's mental ability or intelligence and the respondent's understanding of the basic purpose of counsel. In re Lawrence S., 319 Ill. App. 3d 476, 481 (2001). We review the trial court's determination that respondent lacked the capacity to waive her right to counsel for an abuse of discretion. Lawrence S., 319 Ill. App. 3d at 481.

Respondent concedes that the trial court adequately inquired into her mental ability and understanding of the role of counsel. She contends, however, that her answers demonstrated that she had the capacity to make an informed waiver of counsel and that the trial court erred in concluding otherwise.

In the involuntary admission or medication context, the existing case law does not address the standard by which the trial court is to determine whether the respondent lacks the capacity to

waive counsel. However, in the criminal context, the competence to waive counsel is measured by the same standard as the competence to stand trial. People v. Coleman, 168 Ill. 2d 509, 524 (1995). A person is unfit to stand trial when, due to a physical or mental condition, he or she is unable to understand the nature and purpose of the proceedings or to assist in a defense. Coleman, 168 Ill. 2d at 524. We can think of no logical reason why a different standard should apply in the context of involuntary admission or medication. If one is incompetent (or competent) to waive counsel in a criminal proceeding, it seems to follow that he or she must be equally incompetent (or competent) to waive counsel in a proceeding for involuntary admission or medication. In re Evelyn S., 337 Ill. App. 3d 1096, 1110-11 (2003).

In this case, respondent was found unfit to stand trial on criminal charges slightly more than a month before the trial court denied her leave to represent herself. She remained under that finding of unfitness when the trial court denied her leave to represent herself, and no evidence was presented at the hearing on respondent's request to represent herself that indicated that she was no longer unfit. Thus, we believe that she necessarily lacked the capacity to waive counsel, and the trial court did not abuse its discretion in denying her leave to do so.

Respondent next contends that the State failed to prove by clear and convincing evidence that she lacked the capacity to decide whether to take psychotropic medication. We disagree.

Given the potential serious side effects of psychotropic medication, courts must be cautious in the entry of orders allowing hospital staff to involuntarily administer these drugs to persons suffering from mental illness. In re David S., 386 Ill. App. 3d 878, 883-84 (2008). Section 2--107.1 of the Code delineates the nonemergency circumstances under which psychotropic medication may be administered against the wishes of the recipient. Under this section, psychotropic medication may

be administered to one who is receiving mental health services, provided that the standards and procedures set out in the section are satisfied. In re C.E., 161 Ill. 2d 200, 204 (1994). These guidelines are in place in order to provide the respondent with due process. David S., 386 Ill. App. 3d at 881. Section 2--107.1(a--5)(4) directs that the forced administration of psychotropic medication is authorized only if the court finds evidence of each of the following elements, by clear and convincing proof:

"(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2--107.1(a--5)(4) (West 2008).

In determining whether respondent meets these criteria, we may consider respondent's history of serious violence, repeated past pattern of specific behavior, actions related to her illness, and past outcomes of various treatment options. 405 ILCS 5/2--107.1(a--5)(4) (West 2008).

Clear and convincing evidence is defined as the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the veracity of the proposition in question. In re Israel, 278 Ill. App. 3d 24, 35 (1996). As a reviewing court, we give great deference to the trial court's factual findings (In re Kness, 277 Ill. App. 3d 711, 718 (1996)), but we will reverse an order allowing the involuntary administration of psychotropic medication when the trial court's findings are against the manifest weight of the evidence. In re John R., 339 Ill. App. 3d 778, 781 (2003).

"An individual has the capacity to make treatment decisions for himself when, based upon conveyed information concerning the risks and benefits of the proposed treatment and reasonable alternatives to treatment, he makes a rational choice to either accept or refuse the treatment." In re Israel, 278 Ill. App. 3d 24, 36 (1996). When determining whether an individual has the capacity to make a reasoned decision whether to take psychotropic medications, the trial court should consider the following factors:

"(1) The person's knowledge that he has a choice to make;

(2) The person's ability to understand the available options, their advantages and disadvantages;

(3) Whether the commitment is voluntary or involuntary;

(4) Whether the person has previously received the type of medication or treatment at issue;

(5) If the person has received similar treatment in the past, whether he can describe what happened as a result and how the effects were beneficial or harmful; and

(6) The absence of any interfering pathologic perceptions or beliefs or interfering emotional states which might prevent an understanding of legitimate risks and benefits."

Israel, 278 Ill. App. 3d at 37.

None of these factors is dispositive, and other factors that are relevant should also be considered. Israel, 278 Ill. App. 3d at 37.

Review of the record and application of the above factors demonstrates that the trial court's determination is not against the manifest weight of the evidence. Although no one explicitly testified that respondent was aware that she had a choice to make, her testimony regarding her reasons for refusing the medication indicates that she was aware that she had such a choice. Respondent was given information regarding the recommended medications, but Dr. Susnjar testified that respondent was unable to process that information due to her paranoia, psychosis, disorganized thinking, and denial of her professionally diagnosed mental illness. Respondent testified that she was concerned about her medical history, but Dr. Susnjar testified that respondent refused to allow Dr. Susnjar to explain the implications, if any, the medications might have on respondent's medical problems. While respondent's presence at EMHC was not the result of formal involuntary admission procedures, it was not voluntary, being the result of a finding of unfitness to stand trial. Respondent denied having ever taken any of the recommended medications; however, Dr. Susnjar testified that respondent had been administered Haldol, Ativan, and Benadryl and that respondent had reacted well to the medications. Due to respondent's denial of having ever taken these medications, she was unable to explain what happened as a result and how the effects were beneficial or harmful. Finally,

respondent's belief that she did not suffer from a mental illness and her inability to accept and process the information provided to her would certainly interfere with her ability to understand the legitimate risks and benefits of the recommended medications. Based on all of this, we conclude that the trial court did not err in finding that respondent lacked the capacity to make a reasoned decision whether to take psychotropic medication. See In re Lisa P., 381 Ill. App. 3d 1087, 1093-94 (2008) (where the respondent was aware she had a choice to make but denied that she suffered from a mental illness, was involuntarily committed as a result of a finding of unfitness to stand trial, and suffered rage and paranoia that interfered with her decision making, the trial court's finding that the respondent lacked the capacity to make a reasoned decision whether to take psychotropic medication was not against the manifest weight of the evidence).

Respondent's final contention is that the State failed to demonstrate that her ability to function had deteriorated. According to respondent, her unemployment, legal problems, and inability to retain private counsel do not demonstrate she was unable to function. While individually these facts might not demonstrate a deterioration in respondent's ability to function, taken together and with other evidence they support the trial court's finding that respondent's ability to function had deteriorated due to her mental illness. In addition to the facts that she was no longer working, had multiple legal issues, was unable to retain private counsel despite contacting 19 different attorneys, and had been found unfit to stand trial, respondent seemed unable to control herself during court proceedings. During both hearings at which respondent's request to represent herself was addressed, the trial court had to warn respondent numerous times to stop interrupting the court and to answer the questions put to her. At one point, the trial court even had to remove respondent from the courtroom after she refused to stop interrupting. While respondent was testifying during the hearing

on the petition, she became so excited that the trial court had to tell her to calm down and sit back in the chair. Further, Dr. Susnjar testified that as a result of her illness, respondent was unable to execute plans, carry on everyday conversations, accept and process what other people say, make decisions, or execute simple tasks. Certainly, respondent's inability to behave appropriately in court, interact with others, process information, make decisions, and execute simple tasks supports a finding that her ability to function had deteriorated due to her mental illness.

Moreover, Dr. Susnjar opined that respondent was suffering in that she would become angry because she was unable to effectively convey information and to execute simple tasks that the average person could easily perform. See 405 ILCS 5/2--107.1(a)(4)(B) (West 2008) (requiring that the State demonstrate that the respondent, as a result of her mental illness, (1) had deteriorated in her ability to function, (2) was suffering, or (3) exhibited threatening behavior). Respondent does not contend that there was insufficient evidence to establish that she was suffering. Instead, she argues that the trial court did not make a specific finding of whether respondent was suffering and that we should defer to the trial court's decision not to make such a finding. Respondent overlooks, however, the fact that we may affirm on any basis found in the record. Leonardi v. Loyola University of Chicago, 168 Ill. 2d 83, 97 (1995) ("As a reviewing court, we can sustain the decision of a lower court on any grounds which are called for by the record, regardless of whether the lower court relied on those grounds and regardless of whether the lower court's reasoning was correct").

CONCLUSION

For the foregoing reasons, we affirm the trial court's order authorizing the administration of psychotropic medication.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

BURKE and SCHOSTOK, JJ., concur.