NOS. 4-10-0346, 4-10-0347 cons.     Filed 12/22/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: JOSEPH P., a Person Found | ) | Appeal from |
| Subject to Involuntary Admission, | ) | Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Sangamon County |
| Petitioner-Appellee, | ) | No. 10MH329 |
| v. (No. 4-10-0346) | ) | |
| JOSEPH P., | ) | |
| Respondent-Appellant. | ) | |
| ------------------------------------------ | ) | |
| In re: JOSEPH P., a Person Found | ) | No. 10MH364 |
| Subject to Administration of | ) | |
| Psychotropic Medication, | ) | |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Petitioner-Appellee, | ) | |
| v. (No. 4-10-0347) | ) | Honorable |
| JOSEPH P., | ) | Esteban F. Sanchez, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Respondent, Joseph P., appeals from his involuntary admission pursuant to section 3-600 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3-600 (West 2008)) and the order he be involuntarily administered psychotropic medication pursuant to section 2-107.1 of the Code (405 ILCS 5/2-107.1 (West 2008).  Respondent argues the court's order should be reversed because (1) the petition to involuntarily admit him failed to strictly comply with sections 3-606, 3-610, and 3-611 of the Code; (2) no clear and convincing evidence warranted his involuntary admission; and (3) the State failed to prove each statutory element of section 2-107.1 of the Code to justify involuntary administration of psychotropic

medication.  We find there was not strict compliance with statutory procedures and reverse.

## I. BACKGROUND

On April 16, 2010, the State filed a petition for the involuntary admission of respondent, age 18, under section 3-600 of the Code (405 ILCS 5/3-600 (West 2008)).  The petition alleged respondent was mentally ill and, by reason of the mental illness, unable to provide for his basic physical needs so as to guard himself from serious harm.  In support of those allegations, the petition included a factual basis provided by his mother.  His mother stated, "[respondent] talks continually about how he can not do anything in life now because the government conspiracies, the doctor's conspiracies against him and my conspiracies against him."  She also reported he has been found walking down the highway asking for rides even though he has no money and nowhere to go.  He has become more aggressive with his mother and has screamed at her she is a "psychotic bitch" and a criminal.  Respondent's mother is afraid he will harm her or his sister.  He stopped taking his medication and has dropped out of school.  Respondent does not sleep well and stays up most of the night.  He paces continuously, rubs his hands together until they are raw and constantly twirls his hair.  He hears noises outside and thinks they are gunshots.  When a police officer came to take him from his mother's home to the hospital, respondent told the officer he thinks about harming his mother or his sister.

Respondent arrived at the emergency room of Blessing

Hospital (Blessing) in Quincy at 2:40 a.m. on Thursday, April 15, 2010. According to the signed affirmation of a registered nurse at Blessing, she served the petition upon respondent at 3 a.m. on April 15, 2010. However, the petition was not signed by respondent's mother until 6:30 p.m. that same day. He was not examined by a physician at Blessing until 8 p.m. on April 15. Sometime during the night, respondent was transferred to McFarland Mental Health Center (McFarland), where he was examined by another physician at 3 a.m. on April 16, 2010.

The petition, when filed in the Sangamon County circuit court at 10:30 a.m. on Friday morning, April 16, 2010, was accompanied by the certificates of the two physicians. A psychiatrist examined respondent at McFarland at 2:10 p.m. on April 16. The certificate of the psychiatrist was filed with the court the following Monday, April 19, 2010.

On Friday, April 23, 2010, the trial court appointed counsel, set a hearing for that date, and over respondent's objection, continued the hearing for seven days to April 30. On April 27, 2010, the State filed a petition for the administration of authorized involuntary treatment of respondent. On April 30, respondent was involuntarily committed to a mental-health facility and ordered he be subjected to involuntary treatment.

Respondent appealed both the involuntary commitment and the authorization for involuntary treatment. The appeals were consolidated.

## II. ANALYSIS

- 3 -

On appeal, respondent argues the trial court's order should be reversed because (1) the petition to involuntarily admit him failed to strictly comply with section 3-606 of the Code (405 ILCS 5/3-606 (West 2008)), which provides a police officer who transports a person to a mental-health facility may complete an involuntary-admission petition himself or shall identify himself on the petition as a potential witness with name, badge number, and employer; (2) the State failed to strictly comply with section 3-610 of the Code (405 ILCS 5/3-610 (West 2008)), which provides a psychiatrist shall examine a respondent within 24 hours after admission, otherwise the respondent shall be released; (3) the State failed to strictly comply with section 3-611 of the Code (405 ILCS 5/3-611 (West 2008)), which provides a petition for involuntary admission and first certificate shall be filed with the court within 24 hours after a respondent's admission in the county where the facility is located and a hearing shall be set and held within five business days after the petition and certificate are filed; (4) the trial court violated his constitutional and statutory rights to liberty because no clear and convincing evidence warranted his admission due to the inability to care for his basic physical needs without assistance; and (5) the order authorizing involuntary medication violated his liberty interests because the State failed to prove the required statutory elements for forced medication in violation of section 2-107.1 of the Code (405 ILCS 5/2-107.1 (West 2008)).

A. Mootness

Both parties agree the issues raised by respondent are moot. Respondent's commitment order, entered April 30, 2010, was limited in duration to 90 days. In this case, as in In re Barbara H., 183 Ill. 2d 482, 490, 702 N.E.2d 555, 559 (1998), respondent could be held involuntarily only if a new petition were filed and a new hearing conducted. Whether the commitment order was valid or not, it no longer can serve as the basis for adverse action against respondent. Barbara H., 183 Ill. 2d at 490, 702 N.E.2d at 559. Any decision on the merits would result in an advisory opinion and Illinois courts of review do not render advisory opinions or decide moot questions. Barbara H., 183 Ill. 2d at 491, 702 N.E.2d at 559.

Respondent argues, however, any or all of these three exceptions to the mootness doctrine apply and, therefore, this court should hear his appeal: (1) capable of repetition but avoiding review; (2) collateral consequences; and (3) public interest. The State has conceded the public-interest exception applies to respondent's assertions there was no strict compliance with certain sections of the Code but disagrees this exception applies to respondent's assertions regarding evidentiary questions.

1. Capable of Repetition but Avoiding Review

Where a case involves an event of short duration "capable of repetition, yet evading review," Illinois courts have held it may qualify for review even if otherwise moot. In re A

- 5 -

Minor, 127 Ill. 2d 247, 258, 537 N.E.2d 292, 296-97 (1989). Two criteria must be met in order to receive the benefit of this exception: "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." Barbara H., 183 Ill. 2d at 491, 702 N.E.2d at 559.

As noted earlier, the parties agree there is no question the first criterion has been met. As for the second, respondent argues in analyzing this exception, "same action" has been interpreted to mean the same party could later be subjected to cases based on the same statutory provision or similar orders. In re Suzette D., 388 Ill. App. 3d 978, 983, 904 N.E.2d 1064, 1068-69 (2009). Respondent argues he has raised constitutional and statutory-interpretation arguments which he contends the supreme court in In re Alfred H.H. intimates would be sufficient to overcome the mootness doctrine as "capable of repetition yet avoiding review." See In re Alfred H.H., 233 Ill. 2d 345, 360, 910 N.E.2d 74, 83 (2009). Respondent argues he has raised issues that challenge the trial court's compliance with his statutory rights to proper, timely commitment pleadings, a timely hearing, and treatment in the least-restrictive environment. He contends at his young age (18) he could again face civil commitment and forced medication, having been adjudged mentally ill and subject to commitment and forced medication by the court and now having a history of mental illness. He contends his challenges are

partially statutory and, if not resolved, could confront him again in the future.  The court in <u>Alfred H.H.</u> intimates constitutional and statutory arguments would be sufficient to overcome the mootness doctrine as "capable of repetition yet avoiding review."  See <u>Alfred H.H.</u>, 233 Ill. 2d at 360, 910 N.E.2d at 83. Respondent argues the capable-of-repetition exception applies to both appeals.

As noted in <u>Alfred H.H.</u>, the respondent's burden when arguing the capable-of-repetition-but-avoiding-review exception is to show a substantial likelihood the issue presented by him, and resolution thereof, would have some bearing on a similar issue in a later case.  <u>Alfred H.H.</u>, 233 Ill. 2d at 360, 910 N.E.2d at 83.  Respondent has not met that burden.  The issues of whether respondent was unable to care for his basic physical needs without assistance and whether his liberty interests were violated by authorizing involuntary treatment are clearly fact-based determinations by the trial court.  The orders entered in this case were based on respondent's condition at the time of the orders.  Any future proceedings would entail a fresh evaluation of his particular condition existing at that time.  See <u>Alfred H.H.</u>, 233 Ill. 2d at 358, 910 N.E.2d at 82.  Any determinations as to the sufficiency of the evidence would not be likely to have any impact on future litigation.

### 2. <u>Collateral</u> <u>Consequences</u>

This exception applies where the respondent could be plagued in the future by the adjudication at issue.  <u>Alfred H.H.</u>,

233 Ill. 2d at 361, 910 N.E.2d at 83.  Respondent argues if faced with civil commitment again, having once been judged mentally ill and in need of commitment, he would now have a history of mental illness that would work against him.  See In re Val Q., 396 Ill. App. 3d 155, 159, 919 N.E.2d 976, 980 (2009) (Second District).  He notes the supreme court recognized in Alfred H.H. "a host of potential legal benefits" accrue if his commitment is reversed.  Alfred H.H., 233 Ill. 2d at 362, 910 N.E.2d at 84.  "For in-stance, a reversal could provide a basis for a motion in limine that would prohibit any mention of the hospitalization during the course of another proceeding."  Alfred H.H., 233 Ill. 2d at 362, 910 N.E.2d at 84.

The collateral-consequences exception applies to a first involuntary-treatment order.  Val Q., 396 Ill. App. 3d at 159, 919 N.E.2d at 980.  If a respondent had previous involuntary commitments or felony convictions, collateral consequences would have already attached and are not attributable to the commitment at issue.  Thus, the collateral-consequences exception would not apply.  See Alfred H.H., 233 Ill. 2d at 362-63, 910 N.E.2d at 84.

Respondent's comprehensive psychiatric evaluation references a previous hospitalization at Blessing which was "dropped" during the hospitalization.  The record does not show whether this hospitalization was voluntary or involuntary and what diagnosis of respondent may have been made.  The record fails to show respondent was previously subject to an order for involuntary administration of medication.

As in In re Daryll C., 401 Ill. App. 3d 748, 753, 930 N.E.2d 1048, 1053 (2010), where respondent was never previously involuntarily committed, forcibly medicated, or convicted of a felony, collateral consequences have never previously attached. If the commitment and medication orders stand, adverse consequences will attach and can be used against Joseph P. in future proceedings. Even greater adverse consequences may result for a youthful respondent. Therefore, the collateral-consequences exception to the mootness doctrine applies in this case to all issues on review.

B. Strict Compliance With Sections of the Code

As the State points out, a respondent subject to involuntary commitment should not be allowed to participate in a hearing on the merits only to obtain a new hearing by complaining of a procedural defect. Such a respondent forfeits any objection when not made at trial. See In re Nau, 153 Ill. 2d 406, 419, 607 N.E.2d 134, 140 (1992). However, the forfeiture rule is a limitation on the parties, not on the reviewing court. People v. Lowe, 153 Ill. 2d 195, 199, 606 N.E.2d 1167, 1170 (1992).

When a bevy of procedural irregularities occur, as in this case, the State should not always be allowed to prevail with the argument respondent failed to raise objections to these irregularities in the trial court. Errors and irregularities that would not be tolerated in other civil proceedings and criminal cases are too often overlooked in mental-health proceedings. When the State subjects an individual to the potential

- 9 -

loss of liberty inherent in involuntary-commitment proceedings, it should be required to follow the rules.

We will review the procedural irregularities here under a theory analogous to the plain-error exception to forfeiture. See In re Franklin, 186 Ill. App. 3d 245, 248, 541 N.E.2d 168, 170 (1989). Courts may address an otherwise forfeited issue under the plain-error exception to the forfeiture rule when the evidence is closely balanced or when an error is so fundamental a defendant may have been deprived of a fair hearing. People v. Nesbit, 398 Ill. App. 3d 200, 212, 924 N.E.2d 517, 527 (2010). An accumulation of procedural irregularities in an involuntary-commitment proceeding affects the integrity of the judicial process and satisfies the second prong of the plain-error rule. Instead of being sidestepped, procedural technicalities in the Code should be strictly construed to protect individuals from deprivation of their liberty interests. In re Demir, 322 Ill. App. 3d 989, 992, 996, 751 N.E.2d 616, 618, 621 (2001).

### 1. Failure To Comply With Section 3-606

This emergency commitment proceeding began when unidentified police officers transported respondent to Blessing Hospital in Quincy. Section 3-606 of the Code authorizes a peace officer to take someone into custody and transport him to a mental-health facility when he reasonably believes the person is subject to involuntary admission and in need of immediate hospitalization to protect himself or others from physical harm. The officer then may either complete an involuntary-admission peti-

tion himself or, if not, shall identify himself on the petition as a potential witness by name, badge number, and employer. 405 ILCS 5/3-606 (West 2008).

Liberty interests are involved, and strict compliance with statutory procedures is required. In re Robin C., 385 Ill. App. 3d 523, 527, 898 N.E.2d 689, 692 (2008). In determining whether a respondent's statutory and constitutional rights have been violated, review is de novo. In re Shirley M., 368 Ill. App. 3d 1187, 1190, 860 N.E.2d 353, 356 (2006).

The State contends although strict compliance is generally required in involuntary-commitment proceedings, reversal is not required for failure to strictly comply with statutory procedures unless a respondent suffered prejudice. In re Louis S., 361 Ill. App. 3d 763, 768, 838 N.E.2d 218, 222 (2005). In this case, the petition was filed by respondent's mother.

The State argues the fact the officer's name, badge number, and employer were not on the petition as section 3-606 requires, as a potential witness, was not prejudicial to respondent. The petition was based on the knowledge of respondent's mother. No information from police officers was relied on or included in the petition or the comprehensive physical, psychiatric, and social investigation presented to the court. Thus, the absence of the officer's information caused no prejudice to respondent and should be deemed harmless error. See Robin C., 385 Ill. App. 3d at 527-28, 898 N.E.2d at 693.

The State may not have relied on any evidence from the

police officer involved. Failing to provide contact information about the officer in the petition as <u>required</u> by section 3-606 deprived respondent of using testimony by the officer that may have been beneficial to him. The failure to comply with section 3-606 resulted in potential prejudice to respondent.

### 2. <u>Failure</u> <u>To</u> <u>Comply</u> <u>With</u> <u>Section</u> <u>3-610</u>

Section 3-610 of the Code requires a psychiatrist to examine a respondent within 24 hours after admission. Otherwise, the respondent shall be released. 405 ILCS 5/3-610 (West 2008).

Respondent contends he was admitted to Blessing at 2:40 a.m. on April 15, 2010. On April 16 at 2:10 p.m., Dr. Aura Eberhardt, a psychiatrist, examined him at McFarland and completed a medical certificate. This was the first such certificate by a psychiatrist. This was more than 35 hours after his "detention" began.

The time element of section 3-610 only becomes significant after a respondent is admitted to a mental-health facility, either freestanding or a unit in a general hospital, not when he is taken to an emergency room of a general hospital. <u>In re</u> <u>Moore</u>, 301 Ill. App. 3d 759, 765-66, 704 N.E.2d 442, 445-46 (1998). The State argues respondent was admitted to McFarland at least by 3 a.m. on April 16 and the psychiatric exam was conducted at 2:10 p.m., well within 24 hours of his admission to a mental-health facility.

The procedural history of respondent's confinement begins with his admission to Blessing at 2:40 a.m. on April 15

and service upon him at 3 a.m. with a petition, apparently unsigned as his mother did not sign the petition until 6:30 p.m. that same day. He was examined in the Blessing emergency department by a physician at 8 p.m., 17 hours after service of the petition, if not admission to Blessing. Approximately 24 hours after service with the petition, he was moved to McFarland, where he was again examined by a physician at 3 a.m. on April 16, 2010. He was not examined by a psychiatrist until 2:10 p.m. on April 16.

Respondent contends the nurse who signed a form at Blessing that stated "within 12 hours of admission to the facility under this status I gave the respondent a copy of this Petition," also stated it was at 2:40 a.m. on April 15, starting the time running under section 3-610. The same nurse signed a "Proof of Service for Involuntary Admission," which stated "Patient was admitted 4/15/10 at 0240." Thus, Dr. Eberhardt's examination occurred over 35 hours after his admission.

We cannot tell from this record whether respondent was admitted to the section of Blessing, a licensed private hospital, which treated persons with mental illness. If he was not so admitted, was he "admitted" to the emergency room of the hospital, where he remained there for 17 hours after he was brought to Blessing by the police officer?

### 3. Failure To Comply With Section 3-611

Section 3-611 of the Code mandates an emergency involuntary-admission petition and first certificate be filed

within 24 hours after respondent's admission in the county where the facility is located. A hearing on the petition shall be set and held within five business days after petition and certificate are filed. 405 ILCS 5/3-611 (West 2008).

Respondent was admitted to Blessing at 2:40 a.m. on April 15, 2010. At 6:30 p.m. his mother signed the petition. The petition, along with both physicians' medical certificates, was filed with the court at 10:30 a.m. on April 16. Respondent argues the petition and both physicians' certificates were filed in Sangamon County more than 24 hours after his admission to Blessing in Adams County.

Disregarding the filing requirement of the Code should not be condoned. In re O.C., 338 Ill. App. 3d 292, 298, 788 N.E.2d 1163, 1168 (2003). Respondent contends the timeliness of the mandate's filing cannot be forfeited or considered harmless. Failure to file these documents within 24 hours is error. Demir, 322 Ill. App. 3d at 994-96, 751 N.E.2d at 620-21. These filing defects cannot be easily cured even with prompt objections since the statutory mandate has already has been abused. In re Stone, 249 Ill. App. 3d 861, 866, 619 N.E.2d 1345, 1348 (1993).

Respondent's argument presumes his admission began at Blessing at 2:40 a.m. on April 15, 2010. We cannot be sure from this record whether this is a correct calculation. We cannot be sure whether the petition in this case was timely filed. We decline to hold this lack of clarity against respondent.

Another provision of section 3-611 requires a hearing

shall be set and held on a timely petition within five business days after the petition and first certificate have been filed. 405 ILCS 5/3-611 (West 2008). A trial court's failure to hold a hearing within five days as required by section 3-611 renders the commitment order erroneous. In re Lanter, 216 Ill. App. 3d 972, 974, 576 N.E.2d 1219, 1220 (1991).

The petition here was filed on April 16, 2010, a Friday. On Friday, April 23, the trial court appointed counsel, set a hearing for that date, and over respondent's objection, continued the hearing for seven days to April 30. On April 30, respondent was involuntarily committed to a mental-health facility.

Although section 3-611 requires a hearing within five days of the filing of a petition, under section 3-800(b), the trial court may grant a continuance on its own motion or of one of the parties not to exceed 15 days. 405 ILCS 5/3-800(b) (West 2008). The continuance granted to the State in this case of seven days is within the time frame provided in the statute. Thus, respondent cannot complain about the granting of the continuance, if the petition was timely filed.

### 4. Service of Unsigned Petition

A petition for involuntary commitment must be served upon a respondent within 12 hours of his admission. 405 ILCS 5/3-609 (West 2008). According to the record, respondent was served with the petition within 20 minutes of his admission to Blessing, 3 a.m. on April 15, 2010. On the face of the petition,

however, respondent's mother did not <u>sign</u> the petition until 6:30 p.m. on April 15. Because respondent was handed an unsigned petition at 3 a.m., we do not know if the petition was blank or whether it included the factual statement provided to support his mother's assertions he was a mentally ill person unable to provide for his basic needs so as to guard himself from serious harm without assistance of another. It is doubtful his mother filled out the paragraph on the petition and the full-page attachment within 20 minutes of respondent's arrival at Blessing. This is an important procedural irregularity as the record does not indicate respondent received a copy of the petition after it was signed and filed until it was later served upon him on April 23, 2010.

Each of the enumerated procedural irregularities by itself would not necessarily support reversal of respondent's commitment. However, taken together, they show the statutory purpose of the Code was violated.

"Involuntary admission procedures represent the legislature's attempt to balance the individual's interest in liberty against society's dual interests in protecting itself from dangerous mentally ill persons and caring  for those who are unable to care for themselves. [Citation.] The Code's procedural safeguard's are not mere technicalities. [Citation.] Rather, they are essen-

- 16 -

tial tools to safeguard the liberty interests of respondents in mental health cases." *In re Robert D.*, 345 Ill. App. 3d 769, 770-71, 803 N.E.2d 1067, 1069 (2004). A total disregard for the requisite procedures should not be condoned.

We find the totality of the procedural irregularities in this case requires reversal of respondent's involuntary commitment. Because he was wrongly committed, he was also wrongly ordered to submit to involuntary treatment, and we reverse that order also.

Because we have found the procedural violations alleged by respondent require reversal, we do not address respondent's remaining issues.

This case is another in a series of mental-health cases from Sangamon County where procedural deficiencies permeate the record. This reversal should not be viewed as criticism of the trial judge, the assistant State's Attorney, or the respondent's attorney. It is commentary on the failure of a system. Mental-health services in Illinois are underfunded or unavailable. There are fewer state-run facilities. The caseload in Sangamon County continues to rise as respondents are transferred to McFarland for hearings and treatment. The assistant State's Attorneys and public defenders assigned to mental-health cases are often inexperienced. Some of the errors and deficiencies occur before the case ever reaches Sangamon County. The capable

and diligent trial judge has an impossible caseload given the procedural requirements of the Code, the number of cases, the inexperience of counsel, and the behavior of the respondents.

We once again point to the special concurrence in In re Dorothy J.N., 373 Ill. App. 3d 332, 338, 869 N.E.2d 413, 418 (2007) (Steigmann, P.J., specially concurring). See generally In re Andrew B., 237 Ill. 2d 340, 354-55, 930 N.E.2d 934, 942-43 (2010) (citing Presiding Justice Steigmann's special concurrence and collecting other cases). We conclude the Sangamon County State's Attorney, the public defender, and the Guardianship and Advocacy Commission should work collaboratively to provide training, develop a flowchart, and improve the process.

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment.

Reversed.

STEIGMANN and POPE, JJ., concur.