THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES E. CLARK, Defendant-Appellant.

Third District   No. 80-683

Opinion filed July 28, 1981.—Rehearing denied August 27, 1981.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by the defendant, Charles E. Clark, from his conviction for possession of between 30 and 500 grams of cannabis. After being found guilty in a stipulated bench trial, the defendant was fined $300 and sentenced to 18 months' probation. Prior to trial, however, the defendant did move to suppress as evidence the cannabis seized, and it is

the trial court's denial of the motion to suppress, after conducting a hearing, which is the basis of this appeal.

At the suppression hearing, the defendant and the arresting officer, Kankakee County Deputy Sheriff Donald Eckels testified. Deputy Eckels testified that he was on patrol at the junction of Routes 1 and 17 near Grant Park, Illinois, at 6:30 p.m. on February 7. He observed a car with only one taillight and activated his red lights to stop it. At that time, Eckels noticed the car was swerving from one lane to the other and saw the driver bend over to the passenger side of the car. When the car stopped, the defendant was found to be the sole occupant. Eckels approached the car and asked the defendant for his license. The defendant was sitting in the car with his window rolled completely down, but the deputy did not smell an odor emanating from the car. The defendant then opened his car door, exited from the car and stood right next to the open door. Eckels, standing one foot away from the defendant and facing him, looked into the car and observed a green leafy substance on the driver's side floor. Eckels saw the plant material, which consisted of broken crushed leaves and seeds, on the green floor carpet. He could not recall there being floor mats or how many leaves there were. Having seen and made verified seizures of cannabis previously, Eckels believed the substance he observed to be cannabis. At Eckels' request, the defendant stepped to the front of the car. Eckels then proceeded to search the vehicle. He first seized the round seeds and green material from the carpet, and then discovered an open Marlboro box containing cannabis on the middle of the front seat. He had not seen this box previously. Noting that, even though he had not turned off the ignition of the car and did not recall asking the defendant to do so, the car had been turned off, Eckels took the keys from the ignition, opened the locked glove compartment, and found three bags of a substance he believed to be cannabis. Thereafter, Eckels arrested the defendant, patted him down and took him to the station. On the way there, the defendant informed Eckels that he had two more bags in his coat pocket which he would turn over at the station. The defendant did turn these over, and the seized cannabis was subsequently taken to a crime lab.

The defendant's version of the incident varies somewhat from the deputy's account. The defendant testified that he rolled the window down only four or five inches when Eckels approached the vehicle, and that he remained in the car while handing his driver's license to the officer. According to the defendant, the deputy asked what the defendant was burning, and when informed by the defendant that there was a stick of strawberry incense burning in the back seat ashtray, the deputy asked the defendant to exit the car and stand in front of it. The deputy then searched the car.

The defendant denied that there was anything on the front floor of the car except the light brown floor mats. He admitted to having a cigarette box containing rolled cannabis above the visor in the car. But according to the defendant's testimony, the deputy turned off the ignition, used the keys to open the locked glove compartment, and then discovered three bags of cannabis. The deputy had no warrant, and the defendant had not consented to the search. The defendant was arrested and his person searched after the car search. The deputy recovered nothing in this search, but on the way to the police station, the defendant turned over two bags of cannabis from his person to the deputy. The defendant would not have done so but for the arrest.

■■■ An exception to the requirement of police obtaining a valid search warrant before conducting a search exists where an automobile is stopped and the officer has probable cause to believe the vehicle contains contraband or evidence of a crime. (*Carroll v. United States* (1924), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280.) However, this court has already determined an officer has no justification to believe there is marijuana somewhere else in the car merely because the officer observed a few seeds on the floor of a car in a rural area. (*People v. Blixt* (1976), 37 Ill. App. 3d 610, 346 N.E.2d 31.) Likewise, an officer observing a defendant driver bending over as if to place something under the seat does not provide the officer with a reasonable basis for suspecting the presence of an illegal substance in the vehicle. *People v. Myers* (1978), 66 Ill. App. 3d 934, 384 N.E.2d 516.

The State suggests that we consider *Price v. United States* (D.C. App. 1981), 429 A.2d 514, as persuasive authority. We find the *Price* case to be distinguishable from the case at bar, however. In *Price* the car was located in an alley in an area of heavy narcotics activity, there was a "furtive gesture" in that one of the two occupants bent over momentarily when the squad car pulled up, and both occupants left the suspect vehicle from the passenger door so as to stand between the suspect vehicle and the officer's vehicle, and the officer observed a manila envelope at the very point in the vehicle where the furtive gesture had been directed.

In the case at bar, the car was not stopped in an area of heavy narcotics activity nor did the officer observe any suspicious object on the floor of the passenger side of the defendant's vehicle before initiating the search even though the officer testified that the defendant had bent over to the passenger side when the stop was made.

■■ All evidence discovered as a result of Deputy Eckels' search of the defendant's vehicle should have been suppressed, as should the two bags the defendant subsequently admitted possessing on his person since he would not have admitted that possession had he not been arrested subsequent to the search. (See *Dunaway v. New York* (1979), 442 U.S. 200, 60

L. Ed. 2d 824, 99 S. Ct. 2248.) For the foregoing reasons, the judgment of the Circuit Court of Kankakee County is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

ALLOY, J., concurs.

Mr. JUSTICE HEIPLE, dissenting:

I agree with the trial court, which denied the defendant's motion to suppress.

Based on Officer Eckels' testimony the search was valid. When an automobile is stopped for a traffic violation and the officer has probable cause to believe the vehicle contains contraband, or the evidence of crime, a warrantless search may be permissible (*People v. Davis* (1965), 33 Ill. 2d 134, 138). Here, it was. Eckels saw defendant's vehicle swerving in traffic while being driven with an inoperative taillight. Flashing his patrol car lights, he signalled Clark to pull off the road. In so doing, Eckels saw defendant reach down, as if to hide something, underneath the car's front seat. Clark was the vehicle's sole occupant. Finally, when Clark exited the car, leaving the driver's door open, Eckels observed, in plain view, cannabis on the floor of the driver's side. Although such factors, when evaluated independently, are insufficient to warrant further search of the inside of the vehicle (including the glove compartment), when considered in conjunction with one another, they authorize the officer's continued search without a warrant.

The majority's reliance on *People v. Blixt* (1976), 37 Ill. App. 3d 610, and *People v. Myers* (1978), 66 Ill. App. 3d 934, is unavailing. In the former case, the police, at best, had a questionable basis for stopping the Blixt auto. It is sheer drivel to conclude that probable cause to search a car for stolen stereo speakers permits a police officer to search for, and then gather, marijuana seeds from the floor of that auto's rear seat. That is what happened in *Blixt*. The scope of that search was too broad. Also, *Myers* has little applicability to the instant case. Like Clark, Myers was stopped for a traffic violation. He, too, was observed as if hiding something under the seat. When the officers asked Myers for his license he noticed a brown paper sack partially hidden under the seat of the car. The officer told Myers to get out of the car. The bag was searched and cannabis found. By itself, however, the bag was not evidence of a crime, nor was the eventual discovery of the marijuana in the bag inadvertent.

In the matter at bar, Eckels observed not only marijuana seeds, but marijuana leaf material in the Clark auto. He saw this because Clark left the car door open after exiting from it voluntarily. Eckels had the right to

look into the auto and see that which was in plain view. (*People v. Bombacino* (1972), 51 Ill. 2d 17, 22.) Based on his experience, Eckels concluded the substance was cannabis. It was reasonable then, in view of Clark's manner of driving, as well as the aforementioned furtive gesture, and the cannabis debris on the floor, to believe more contraband was in the car. The search of the Marlboro box on the driver's seat confirmed this belief which, in turn, authorized the continued search of the inside of the vehicle.

Also, the majority's conclusion to reverse the trial court's decision, in effect, amounts to a trial *de novo* of the suppression hearing. The trial judge had the responsibility to resolve conflicts in testimony based on the credibility of the witnesses. He did so in favor of Eckels. By reversing, the majority says such an evaluation is implausible. Since we are not the trial court, whether this is true or not is not the issue. This is so because the record, which supports the trial judge's finding the search valid, is not against the manifest weight of the evidence. Accordingly, a reviewing court has no right to insert its opinion of the facts for that of the trial court. (*People v. Medina* (1978), 71 Ill. 2d 254, 258.) Here the majority, unlike those appellate courts in *Blixt* and *Myers*, reverses the trial court's findings. Since the state of the record does not support such a result, I dissent.