# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Hopson*, 2012 IL App (2d) 110471

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KENDRICK HOPSON, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0471 |
| Filed | September 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's motion to suppress cannabis seized from him without a warrant was improperly granted on the ground that the State did not present any evidence of the officer's ability to recognize cannabis, since the absence of such evidence is not *per se* fatal to a finding of probable cause, and in defendant's case, even absent the additional evidence, it was not unreasonable for the officer to believe the green, leafy substance he saw in a plastic bag was cannabis. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 09-CF-3200; the Hon. John R. Truitt, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Jay Paul Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas A. Lilien and Sherry R. Silvern, both of State Appellate Defender's Office, of Elgin, for appellee.

Panel

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Hudson and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1     Defendant, Kendrick Hopson, was charged with armed violence (720 ILCS 5/33A-2(a) (West 2008)), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2008)), aggravated unlawful possession of a weapon (720 ILCS 5/24-1.6 (West 2008)), possession of a firearm without a firearm owner's identification card (430 ILCS 65/2(a)(1) (West 2008)), possession of a controlled substance (720 ILCS 570/401(c)(2) (West 2008)), and possession of a controlled substance with the intent to deliver (720 ILCS 570/407(b)(1) (West 2008)). Defendant moved to suppress the cocaine and marijuana that the police seized from him. The trial court granted the motion, and the State appeals. The State contends that the trial court erred in granting the motion on the basis that the State failed to produce evidence of the officer's ability to recognize cannabis, arguing that such evidence was unnecessary. Alternatively, the State argues that the trial court erred in denying its motion to reopen the proofs so it could lay the foundation. We agree with the State's first argument and therefore reverse the trial court's grant of defendant's motion to suppress.

¶ 2     At the hearing on the suppression motion, defendant testified that in the early morning hours of October 9, 2009, he was sitting in a Cadillac in the parking lot of the Body Shop, a strip club in Rockford, when a police car pulled into the lot and stopped in front of defendant's car. As defendant got out of the car to go into the club, two officers got out of the squad car and asked him for identification. Defendant said that he had none. He then returned to his car to place in it a candy bar that he had been given and to retrieve his keys. As he started walking away from the car, one of the officers asked him a second time for identification and said that he was going to search him for weapons. In doing so, the officer located defendant's identification. The officer also felt an object in defendant's breast pocket and asked what it was. Despite defendant's claim that it was candy, the officer removed the item and discovered that it was cocaine. He then arrested defendant. Defendant admitted that he had a bottle of Grey Goose vodka on the floorboard of the car and admitted that it had been opened, but he denied that the cap was off when the officer was there.

¶ 3   Rockford police officer Ronald Berke testified that he had been instructed to keep an eye out for people hanging out in the Body Shop parking lot. The block was a crime "hot spot" where there had been drug dealings and shootings. Specifically, Berke testified that there had been several problems in the parking lot and within the business in recent weeks. The night before, there had been two different shootings in or near that parking lot. The Body Shop itself had enlisted the police department's assistance in keeping order in the lot.

¶ 4   Berke and his partner, Officer John Eissens, were driving past the Body Shop when they saw a group of five or six people standing around a blue Cadillac in the parking lot. They pulled into the lot and approached the group. As they did so, defendant got out of the car and also approached the group. Defendant then returned to the driver's side of the car, and Berke went to the passenger side. Defendant got in the car and put a candy bar in the center console area. When he did so, Berke saw in the pocket of the driver's-side door a small plastic bag containing what appeared to be cannabis. Berke also noticed an open bottle of Grey Goose vodka on the driver's-side floorboard. The cap was off the bottle. Berke testified that at this point defendant was not free to leave, because of the bag of cannabis. When asked if he eventually recovered the "green, leafy substance," Berke testified that he did. Defendant got out of the car and walked back to the group. Berke asked him for identification. Berke's account of his second encounter with defendant was largely consistent with defendant's.

¶ 5   Approximately one month later, the State was allowed to reopen its proofs on the motion to suppress evidence and called Eissens. Eissens testified that on October 9, 2009, he was on the "tact team," which was a street team that dealt with "prostitution, guns, [and] drugs." On the evening of October 9, he was riding with his partner at the time, Berke. He went on to identify various photographs in evidence.

¶ 6   After the evidence had been presented, defendant argued that there had been no foundation for Berke's testimony that the substance in the plastic bag appeared to be cannabis. The court found that Berke's search of defendant exceeded the scope of a *Terry* stop but would have been a proper search incident to arrest if there was probable cause. Thus, the court concluded that its ruling hinged on whether Berke's testimony was sufficient to establish probable cause absent some foundation for his experience with cannabis. The State then moved to reopen the proofs, which was denied. Yet, the court continued the matter to allow the parties to research the foundation issue.

¶ 7   At the continued hearing, the trial court reviewed the case law and the evidence. The trial court stated that Berke's testimony that the plastic bag appeared to contain cannabis was credible. However, it then concluded that there had to be some minimal foundation for the officer's opinion that it was cannabis. On that basis, the court granted defendant's motion to suppress. The State renewed its motion to reopen the proofs, and the court denied that motion. The State then moved for reconsideration, and the court denied that motion. The State timely appeals.

¶ 8   In reviewing a trial court's ruling on a motion to suppress evidence, we apply the two-part standard of review adopted by the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). "Under this standard, a trial court's findings of historical fact should be reviewed only for clear error, and a reviewing court must give due weight to any inferences

drawn from those facts by the fact finder." *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). "In other words, we give great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence." *Id.* "A reviewing court, however, remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted." *Id.* "Accordingly, we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted." *Id.*

¶ 9        Defendant's motion to suppress alleged that his arrest was done without probable cause. As a result of the lack of probable cause to arrest him, defendant argues, the subsequent seizure of marijuana, vodka, a gun, and cocaine from the search of his person and vehicle must also be suppressed. A warrantless arrest may be conducted by police officers if they have probable cause to believe that the person to be arrested has committed or is committing an offense. *People v. Redman*, 386 Ill. App. 3d 409, 420 (2008). Probable cause exists when the totality of the facts and circumstances known to the officers is such that a reasonably prudent person would believe that the suspect has committed or is committing a crime. *Id.* Whether probable cause exists is governed by common-sense considerations, and the calculation concerns the probability of criminal activity, not proof beyond a reasonable doubt. *Id.* Upon review, this court examines the events leading up to the arrest and decides whether the historical facts, viewed from the standpoint of an objectively reasonable police officer, support a finding of probable cause. *Id.* at 420-21.

¶ 10       In this case, the undisputed facts provide that: (1) Berke and Eissens were assigned to patrol the area of the Body Shop because it was a current "hot spot" for shootings and drug crimes; (2) defendant was in the driver's seat of the car; (3) defendant denied he had identification; (4) there was an open bottle of Grey Goose vodka on the floorboard of the driver's side of the car[1]; (5) there were several young men around the vehicle, a scene similar to a shooting that had occurred nearby the night before; (6) Berke saw a plastic bag of what appeared to be cannabis in the car, and he acknowledged later seizing the "green, leafy substance"; and (7) Eissens was part of the street "tact" team, which focused on drugs, guns, and prostitution, and he and his partner, Berke, were working on October 9. The trial court found that Berke's testimony that the substance appeared to be cannabis was credible, and in light of the overall facts, we find no reason to reverse this factual finding.

¶ 11       We next consider *de novo* the trial court's ultimate legal ruling as to whether suppression was warranted. Having found Berke credible, the trial court reluctantly granted defendant's motion to suppress on the ground that Berke's testimony lacked foundation. The State argues that it was not required to submit evidence of the officer's experience and training regarding the identification of cannabis. We agree with the State. In *People v. Symmonds*, 18 Ill. App. 3d 587, 591 (1974), a state trooper stopped the defendant's car due to a headlight being out.

---

[1]Although defendant was parked on private property, it was not unreasonable for Berke to suspect that defendant was recently on a roadway with the open bottle, which is a violation of the law (625 ILCS 5/11-502 (West 2010)). This is especially reasonable given that defendant stated he was on his way into the Body Shop, making it likely he had just arrived at the club.

During the stop, the officer observed some beer cans on the floor behind the front seat and a plastic lid with a grass-like substance on the backseat. *Id.* The defendant was unable to produce identification and refused to tell the officer his age. *Id.* The officer then ascertained that the beer cans were empty and seized the grass-like substance, which he suspected was marijuana. *Id.* The defendant filed a motion to suppress, alleging that the officer's search was illegal. *Id.* The trial court granted the defendant's motion, finding that there had been no evidence before the court that the officer had any training or knowledge of what marijuana looked like and thus the officer did not have probable cause to seize the grass-like substance. *Id.* at 591-92. However, the trial court concluded that the officer had probable cause to ascertain whether the beer cans were empty, given that the defendant failed to produce identification and appeared underage, which made even the possession of the beer criminal. *Id.* The appellate court ultimately concluded that, because the officer had probable cause to arrest based on the defendant's failure to produce a driver's license and his possession of the beer cans, the seizure of the marijuana was legal. *Id.* at 592-93. However, the appellate court also stated that the trial court appeared to make a ruling in anticipation of a failure of the State to lay a foundation for the evidence at trial. *Id.* at 596. The appellate court stated:

> "The order suppressing the marijuana is not based on findings of an unlawful search (in fact, probable cause to search the car was found), but rather on the grounds the police officer had failed to explain why he believed the grass substance was marijuana to establish his basis for having probable cause to seize it, and this appears to be in anticipation of foundation as to relevance or competence required in order to introduce evidence at a trial rather than to the validity of the search and seizure." *Id.* at 597.

¶ 12    Likewise, in this case, the trial court did not appear to base its ruling on whether the officer had probable cause to arrest defendant because of his observation of what appeared to be cannabis in his car, but rather on the lack of testimony as to why the officer believed that what he saw was cannabis. While an officer's experience and training are relevant in a determination of whether an officer had probable cause to perform a search (*People v. Smith*, 95 Ill. 2d 412, 419-20 (1983)), the absence of such testimony is not *per se* fatal to the determination of probable cause (*People v. Jackson*, 331 Ill. App. 3d 158, 164 (2002)). We find *Symmonds* and *Jackson* particularly persuasive, where in this case defendant never objected to Berke's opinion that he believed the substance was cannabis. See also *People v. Clark*, 92 Ill. 2d 96 (1982) (holding that officer's observation of what appeared to be cannabis leaves on floor of car was sufficient to establish probable cause to search the car and seize the evidence).[2]

¶ 13    Moreover, we find the trial court's reliance on *People v. Barker*, 72 Ill. App. 3d 466 (1979), and *People v. Palanza*, 55 Ill. App. 3d 1028 (1978), to be misplaced. In *Palanza*, the defendant argued that the information contained in the officer's search warrant affidavit,

---

[2]We reject defendant's argument that the appellate opinion in *People v. Clark*, 98 Ill. App. 3d 405 (1981), which sets forth that the officer testified to his experience and ability to identify cannabis, requires such foundation to be laid, as the supreme court did not deem it necessary to discuss such testimony in its opinion.

which outlined what an informant told him, was insufficient to support probable cause to search the premises. *Id.* at 1030-31. The court agreed where the warrant was supported by uncorroborated and unsubstantiated representations by an unknown informant, citing that there was nothing in the affidavit to indicate that the informant had ever purchased cocaine from the defendant or who had told him that the defendant sold cocaine. *Id.* The affidavit simply stated that someone other than the defendant told the informant that the white powder he saw was cocaine. *Id.* at 1029. Unlike in *Palanza*, we are not dealing with a search warrant based on double hearsay of an unknown informant. The facts and holding of *Palanza* are therefore inapplicable to the case at bar.

¶ 14    In *Barker*, the officers were arresting the defendant on a traffic warrant when they observed in an ashtray two hand-rolled cigarette butts that they believed to contain cannabis. *Barker*, 72 Ill. App. 3d at 467. An officer then prepared a complaint for a search warrant in which he stated that he saw " 'two burned cigarette butts of hand rolled cigarettes which are believed to contain cannabis.' " *Id.* The court stated that, to conclude that the butts contained cannabis, the officer must have knowledge of underlying facts that substantiated his belief. *Id.* at 470. When issuing a warrant, the judge may not consider individual or extrajudicial knowledge to supplement the record and so the judge could not have considered the officer's experience with identifying cannabis even had he known such facts. *Id.* at 471-72.

¶ 15    A valid warrant is issued only upon a showing of probable cause and is issued upon a complaint, usually supported by an affidavit. *Id.* at 468. Unlike in *Palanza* and *Barker*, a warrantless arrest and search are reviewed based on an evaluation of the facts and circumstances known to the officer and not on the four corners of a warrant. In this case, defendant had ample opportunity to cross-examine Berke and Eissens and to lodge any necessary objections to their testimony. The trial court was not confined to review the four corners of a warrant to determine whether probable cause existed to issue the warrant. Rather, the trial court was able to listen to the testimony of the witnesses and make its factual determinations, and in this case, the trial court found Berke to be credible. The trial court also had defendant's motion to suppress and amended motion to suppress, neither of which took issue with Berke's ability to identify the cannabis. As stated, Berke saw what appeared to be cannabis and an open bottle of vodka in defendant's car, which was located in a specific area that Berke was assigned to watch because of recent drug and gun crimes. Additionally, defendant denied having identification and was in a group of young men, which was a scene similar to the description given of the previous night's shooting in the area.

¶ 16    Further, unlike *Barker*, this case involves neither the sufficiency of a search warrant nor the ability to discern a legal hand-rolled cigarette from a cannabis-laden one, which might appear identical. Rather, Berke testified that he had retrieved the "green, leafy" substance, indicating that the cannabis was in its more natural state and not rolled in a cigarette. See *People v. Dasenbrock*, 96 Ill. App. 3d 625, 630 (1981) (recognizing that white powder can be more readily confused with nonnarcotic substances than natural-form cannabis, which is a "visually distinctive" plant); *People v. Wright*, 80 Ill. App. 3d 927, 931 (1980) (recognizing that seeing two hand-rolled cigarettes is insufficient grounds for probable cause where there is no evidence that officer had ability to distinguish them from ordinary cigarettes). "[A]lthough grass-like substances are not per se contraband, any grass-like substance which

is precious enough to be collected and placed in plastic containers surely" contributes to probable cause. *Symmonds*, 18 Ill. App. 3d at 598; see also *Sullivan v. District Court*, 429 N.E.2d 335, 339 (Mass. 1981) (stating, in *dicta*, that while true that many cases had implied that the seizing officer had training or experience in recognizing marijuana, the court had "never held, however, that an officer must have seen marihuana before to establish probable cause to seize it and we decline to adopt such an inflexible rule today"; court further agreed with *Symmonds*' suggestion that finding grass-like substance that is precious enough to be placed in plastic containers was sufficient to give reasonable officer probable cause notwithstanding the fact that not every grass-like substance is contraband). Here, regardless of Berke's specific training and experience with marijuana, it was not unreasonable for him to believe that the green, leafy substance secured in a plastic bag was marijuana and not some other, legal substance. Thus, in light of all the facts, we conclude that Berke had probable cause to arrest defendant.

¶ 17    For the sake of completeness, we address the State's alternative argument that, even if it were required that Berke testify to his experience and training, defendant failed to timely object to Berke's opinion on the ground that it lacked foundation. Because defendant failed to object, the State argues that he forfeited the objection and that Berke's testimony was therefore admitted accordingly. We agree with the State.

¶ 18    "[W]hen a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, she cannot contest the admission on appeal." *People v. Bush*, 214 Ill. 2d 318, 332 (2005). The supreme court in *Bush* explained that the defendant's right is forfeited because "by acquiescing in rather than objecting to the admission of allegedly improper evidence, a defendant deprives the State of the opportunity to cure the alleged defect." *Id.*; see also *People v. Bynum*, 257 Ill. App. 3d 502, 514-15 (1994) (defendant forfeited argument that the State failed to lay a proper foundation when he failed to timely object, which would have allowed the State a reasonable opportunity to correct the technical deficiency). Here, defendant never objected to Berke's opinion and never mentioned it in his motion or amended motion to suppress. It was not until arguments after the court closed the evidence that defendant raised an issue with the foundation for Berke's opinion. Contrary to defendant's allegation that the State was attempting to "sandbag" him by requesting that the court reopen the proofs, we see the opposite as being true; it was defendant "sandbagging" the State by failing to give it the opportunity to cure the alleged defect and attempting to succeed on a procedural technicality. The court, having denied the State's motion to reopen the proofs, should not have granted defendant's motion on foundational grounds. The court determined that Berke was credible, and Berke testified that he saw a bag of what appeared to be cannabis in the car of a man who denied having identification, who had an open bottle of vodka, and who was in an area of town known for drug dealings and violence. We agree with the State that the court erred in basing its ruling on this foundational argument by defendant. Even if the foundation were necessary at this point in the proceedings, defendant's failure to timely object would have forfeited the argument.

¶ 19    Further, if the trial court had wanted to consider defendant's untimely objection, we would have found that it abused its discretion in denying the State's motion to reopen the

proofs. "Illinois law generally recognizes the power of a trial court to allow a litigant to reopen his or her case in an appropriate circumstance." *People v. Canulli*, 341 Ill. App. 3d 361, 367 (2003). Even after the State has rested its case, the court has the discretion to allow it to put on additional evidence. *Id.* "The exercise of such discretion will not be reversed absent a clear showing of abuse." *People v. Berrier*, 362 Ill. App. 3d 1153, 1163 (2006). Factors for the court to consider include "(1) whether the failure to introduce evidence occurred because of inadvertence; (2) surprise or unfair prejudice to the adverse party; (3) the importance of the new evidence to the movant's case; and (4) whether cogent reasons exist to justify denying the request." *People v. Ruppel*, 303 Ill. App. 3d 885, 894 (1999). Under the circumstances of this case, it would have been unfair *not* to allow the State to reopen the proofs to address this concern. Even if the State were required to introduce Berke's background, defendant failed to make any timely objection to allow the State to do so. Given that it would have been simple for the State to correct the alleged technicality with no surprise or unfair prejudice to defendant, we see no cogent reason for the court to have denied the request.

¶ 20 For the aforementioned reasons, we reverse the judgment of the circuit court of Winnebago County and remand for further proceedings.

¶ 21 Reversed and remanded.