NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250436-U

NO. 4-25-0436

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 2, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MATTHEW J., a Person Found Subject to Involuntary Admission, | ) ) ) | Appeal from the Circuit Court of Adams County |
| (The People of the State of Illinois, Petitioner-Appellee, | ) ) | No. 25MH74 |
| v. | ) | Honorable |
| Matthew J., Respondent-Appellant). | ) ) | John C. Wooleyhan, Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's order for respondent's involuntary admission to a mental health facility where (1) respondent failed to timely object to the lack of a predisposition report and (2) the record did not establish that a peace officer transported respondent to a mental health facility. Respondent also raised post-admission issues that the appellate court lacked jurisdiction to review.

¶ 2    Respondent, Matthew J., was the subject of a petition for involuntary admission to a mental health facility filed by his father. Following a hearing, the trial court granted the petition and ordered respondent to be involuntarily admitted for mental health treatment for up to 90 days. Respondent appeals, arguing that we should reverse the involuntary admission order because (1) the State failed to file a predisposition report, (2) the petition for involuntary admission was incomplete, (3) a post-admission treatment plan was not timely filed, and (4) his subsequent transfer to a different mental health facility was not authorized. For the reasons that follow, we affirm.

¶ 3                          I. BACKGROUND

¶ 4          On April 15, 2025, respondent's father, David J., filed a petition for involuntary admission of respondent to a mental health facility pursuant to the Mental Health and Development Disabilities Code (Code) (405 ILCS 5/1-100 *et seq.* (West 2024)). In the petition, David sought "[e]mergency inpatient admission" of respondent to "Blessing Hospital." David asserted that respondent was "a person with mental illness who:" (1) "because of his *** illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed;" (2) "refuses treatment or is not adhering adequately to prescribed treatment," because of his illness "is unable to understand his *** need for treatment, and, if not treated on an inpatient basis, is reasonably expected *** to suffer mental or emotional deterioration" and is reasonably expected, after such deterioration, to engage in conduct placing himself or someone else in physical harm; and (3) is "in need of immediate hospitalization for the prevention of such harm."

¶ 5          In support of the foregoing assertions, David wrote: "See detailed letter of history of previous mania but in short Dec 2023, he was in SSM in St[.] Louis diag[nosed] with Bipolar Manic episode. [T]reatment then was 2 injections of Inepa 5 days apart. Lived with parents thru 2024 and had a full recovery." No letter was attached to the petition. David listed himself, respondent's mother, and respondent's brother as witnesses to respondent's behavior. In the petition, David denied that a peace officer detained respondent, took him into custody, or transported him to "the mental health facility."

¶ 6          Attached to the petition was a certificate of examination completed by Dr. Thomas Cliatt at Illini Community Hospital on April 15, 2025. Dr. Cliatt determined that respondent met the requirements for involuntary inpatient admission and was "in need of immediate

- 2 -

hospitalization." According to Dr. Cliatt, respondent (1) "has not been taking his medication as prescribed," (2) "has [a] history of psychosis," and (3) recently "has been threatening toward his parents and has delusions of working for [the Department of Government Efficiency] and running for Governor."

¶ 7 A second certificate of examination was completed by Dr. Salvador Sanchez at Blessing Hospital on April 16, 2025. Dr. Sanchez opined that respondent was subject to "[i]nvoluntary inpatient admission and is in need of immediate hospitalization." The basis for his opinion was as follows: "Patient is manic and believes his father killed his grandmother. Ran away from home to Tennessee driving long distances while manic."

¶ 8 The trial court appointed counsel for defendant. On April 28, 2025, the court held a hearing on the petition. Dr. Sanchez testified that he had been a psychiatrist employed by Blessing Hospital for 21 years. The parties stipulated that Dr. Sanchez was "an expert in the field of psychiatry." Dr. Sanchez testified that respondent was admitted to Blessing Hospital's "inpatient Behavioral Health unit on April 15, 2025." Shortly thereafter, Dr. Sanchez performed a mental health examination of respondent and diagnosed him with "bipolar disorder." Dr. Sanchez testified that respondent's behaviors were potentially harmful to respondent and others. Dr. Sanchez reported that respondent threatened him and other members of the hospital staff and threatened to kill "one of the techs."

¶ 9 Dr. Sanchez recommended that respondent "be court-ordered to remain in this facility for commitment up to 90 days with a leave to transfer to a facility of the Department of Human Services [(DHS)] should the need arise." Dr. Sanchez believed that recommendation was "the least restrictive setting" for respondent. He explained that respondent had shown "little, if any, improvement" in the two weeks he had been at Blessing Hospital and opined that "at this time

it would be a danger to others and to the community for him to be *** released back into the community." Respondent's medical records for his hospitalization at Blessing Hospital were admitted into evidence without objection.

¶ 10    Dr. Sanchez testified that some of respondent's symptoms had decreased since his admission as a result of taking medication. Dr. Sanchez prescribed Invega, Lamotrigine and Trazodone for respondent. Dr. Sanchez testified that respondent had "been cooperative" in taking prescribed medications. As relayed to him by a family member, respondent "took off fairly recently and drove all the way down to Tennessee *** in response to his manic and delusional symptoms." Dr. Sanchez testified that to his knowledge, respondent had not actually caused harm to anyone but "has made threats." According to Dr. Sanchez, respondent had "shown improvement" but was "definitely not ready to be released as of yet." Dr. Sanchez testified that it could take weeks for some patients to show enough improvement on medication to be released from inpatient treatment.

¶ 11    Dr. Sanchez testified that he did not consider any alternative treatments for respondent other than inpatient hospitalization because outpatient treatment would need to be coordinated with respondent's family and respondent only recently allowed Dr. Sanchez to contact his family. Dr. Sanchez testified that the treatment goals for respondent included continuing to (1) "observe that the medication is both safe and effective" and (2) "coordinate with both family and outside resources, including outpatient services for psychiatric, psychotropic medication evaluation and management, as well as counseling, and again, to coordinate with family to find alternative or appropriate placement for this patient." Dr. Sanchez opined that it might be possible to achieve those goals "as early as this week" if respondent allowed him to "collaborate and coordinate with family and his support system."

- 4 -

¶ 12 After presenting Dr. Sanchez's testimony, the State rested. Respondent offered no evidence. Thereafter, the parties offered closing arguments. The State asked the trial court "to find that the petition has been proven." Respondent's counsel argued that the State failed to prove the petition because (1) there was no evidence of "actual violence from [respondent]" and (2) "there is no sufficient predisposition report submitted."

¶ 13 Thereafter, the trial court orally ruled as follows: (1) the hearing was "held in a timely manner as required by the statute;" (2) "the petition has been proven by clear and convincing evidence as required by the statute," as the State "has shown that the respondent does currently suffer from a mental illness and because of that illness could reasonably be expected unless receiving inpatient treatment to engage in conduct placing himself or someone else in reasonable expectation of being harmed;" and (3) "the least restrictive setting for the respondent would be at Blessing Hospital for a period of time not to exceed 90 days with leave to transfer to another facility should that need arise."

¶ 14 The trial court further found that the predisposition requirements of the Code were satisfied, stating, "There is a requirement under Section 3-810 of the [Code] [(405 ILCS 5/3-810 (West 2024))] that there be a predisposition report submitted either in writing or by oral testimony." The court determined that testimony at the hearing satisfied section 3-810 because Dr. Sanchez "testified under oath with regard to predisposition issues," including alternative treatments, treatment goals, and possible timetables for achieving those goals.

¶ 15 The trial court entered a written "Order for Involuntary Admission," granting the petition. The order provided that "[t]he Respondent be hospitalized at Blessing Hospital, a licensed private hospital which is the least restrictive environment currently appropriate and available." The order specified that the period of hospitalization shall not exceed 90 days. The order did not

indicate that the facility director of Blessing Hospital was required to file a treatment plan with the court within 30 days.

¶ 16		On April 29, 2025, respondent filed a notice of appeal from the "Order for Involuntary Admission" entered on April 28, 2025.

¶ 17		On July 1, 2025, an employee of Packard Mental Health Center, an Illinois DHS facility, filed a treatment plan review for respondent dated June 25, 2025. That document indicated that respondent was admitted as a patient to Packard on May 29, 2025. As of June 25, 2025, respondent was described as stabilized and ready for discharge.

¶ 18		II. ANALYSIS

¶ 19		A. Requests to Strike

¶ 20		As an initial matter, the State asks us to strike several statements contained in respondent's opening brief for failure to comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), asserting that they constitute "inappropriate commentary." Rule 341(h)(6) requires a brief's statement of facts to be "stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). In respondent's statement of facts, we find no flagrant violations of the rule that hinder our review of the merits of this appeal. Thus, we will not strike any statements in respondent's opening brief but will disregard any improper comments and remind counsel that commentary and arguments should be confined to the argument section of the brief. See *Ford Motor Credit Co. v. Cornfield*, 395 Ill. App. 3d 896, 902 (2009); *Brazas v. Ramsey*, 291 Ill. App. 3d 104, 108 (1997).

¶ 21		The State also filed a sur-reply brief, asking us to strike from respondent's reply brief an allegation that the State engaged in "sanctionable deception" in its appellee's brief. We grant this request and strike that statement as an unwarranted and inexcusable attack on counsel

for the State. See *Taylor v. Pace Suburban Bus Division of Regional Transportation Authority*, 2025 IL App (1st) 220347-U, ¶ 22 (striking "those portions of plaintiff's brief that consist of personal attacks on the trial judge and opposing counsel"). We do not condone respondent's counsel's conduct and caution counsel against making baseless accusations of impropriety against opposing counsel in the future.

¶ 22                                         B. Appellate Jurisdiction

¶ 23        On appeal, respondent raises four issues. The first two issues relate to the propriety of the trial court's order of involuntary admission. The third and fourth issues relate to events occurring after the court entered its order. Before addressing respondent's claims, we must determine if appellate review of these claims is appropriate.

¶ 24                                         1. *Involuntary Admission Order*

¶ 25        The parties agree that the trial court's 90-day order of involuntary admission has expired, so it is impossible for this court to grant relief from that order. As such, this appeal is moot. See *In re Anne W.*, 2025 IL App (4th) 241257, ¶ 15.

¶ 26        "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). However, there are exceptions to this rule. Respondent argues that the capable of repetition yet evading review exception to mootness applies, and the State agrees.

¶ 27        The capable of repetition yet evading review exception has two elements. *Alfred H.H.*, 233 Ill. 2d at 358. "First, the challenged action must be of a duration too short to be fully litigated prior to its cessation." *Alfred H.H.*, 233 Ill. 2d at 358. "Second, there must be a reasonable expectation that 'the same complaining party would be subjected to the same action again.' "

*Alfred H.H.*, 233 Ill. 2d at 358 (quoting *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)).

¶ 28    Both elements of the exception are met here. First, respondent could not fully litigate his challenges to the petition and involuntary admission order within 90 days. *In re Julie M.*, 2021 IL 125768, ¶ 22; *Anne W.,* 2025 IL App (4th) 241257, ¶ 17. Second, the record indicates that respondent has a history of mental illness, which provides a sufficient basis to believe he could be subject to another petition for involuntary admission. See *Julie M.*, 2021 IL 125768, ¶ 22. Additionally, respondent's arguments concern proper application of the Code and, therefore, may arise again in future involuntary admission proceedings involving respondent. See *Anne W.*, 2025 IL App (4th) 241257, ¶ 17. Thus, we will review the merits of respondent's claims related to the propriety of the trial court's order for involuntary admission.

¶ 29    2. *Post-Order Issues*

¶ 30    In his third and fourth issues on appeal, respondent argues that his rights were violated when (1) a treatment plan was not filed within 30 days of the trial court's involuntary admission order and (2) he was transferred to another facility approximately one month after the court entered its involuntary admission order. We lack jurisdiction to consider these issues.

¶ 31    Filing a notice of appeal is a necessary step to confer appellate jurisdiction. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) provides that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." "A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal." *General Motors Corp.*, 242 Ill. 2d at 176. No notice of appeal can be filed for "an order not yet in existence." *In re Marriage of Ward*, 267 Ill. App. 3d 35, 41 (1994).

¶ 32    Here, respondent filed his notice of appeal on April 29, 2025, one day after the trial

court entered its order for involuntary admission. The only order identified in respondent's notice of appeal was the "Order for Involuntary Admission." Thus, we only have jurisdiction to consider the issues on appeal that are related to the propriety of that order. See *General Motors Corp.*, 242 Ill. 2d at 176. Respondent's third and fourth issues on appeal are not related to the propriety of the court's order for involuntary admission. Rather, those issues are related to events that transpired one month or more after the court's involuntary admission order was entered. We have no jurisdiction to review the propriety of those events because they were (1) not identified in the notice of appeal and (2) not yet in existence when the notice of appeal was filed. See *General Motors Corp.*, 242 Ill. 2d at 176; *Marriage of Ward*, 267 Ill. App. 3d at 41.

¶ 33 Further, precedent from this court establishes that an alleged violation of a respondent's rights occurring after an order for involuntary commitment is entered is not a basis for reversal of the commitment order. See *In re Peterson*, 113 Ill. App. 3d 77, 81 (1983). In *Peterson*, the respondent argued that the trial court's order of involuntary commitment should be reversed because the facility director did not timely file a treatment plan as required by section 3-814 of the Code (Ill. Rev. Stat. 1981, ch. 91½, ¶ 3-814). This court disagreed, stating: "We have no knowledge of any theory whereby an order for hospitalization can be upset for failure of [DHS] personnel to take subsequent action required by statute." *Peterson*, 113 Ill. App. 3d at 81. Thus, we found "no merit" in the respondent's contention. *Peterson*, 113 Ill. App. 3d at 81. Similarly, here, the events occurring after the court entered its involuntary admission order, including the facility director not timely filing a treatment plan required by section 3-814 and respondent being transferred to a DHS facility, cannot "upset" the trial court's order for involuntary admission. See *Peterson*, 113 Ill. App. 3d at 81.

¶ 34 Thus, we will not review respondent's third and fourth arguments on appeal.

¶ 35                                C. Predisposition Report

¶ 36            Respondent argues that the trial court erred in granting the petition for involuntary

admission because no written predisposition report was filed. He contends that counsel objected

to the absence of a report when he asserted in his closing argument that the State did not submit a

"sufficient predisposition report." The State responds that (1) respondent did not timely object to

the lack of a written report and (2) the oral testimony was sufficient to satisfy the requirements of

the Code.

¶ 37            "Because the Code protects liberty interests, strict compliance with statutory

procedures is required." *In re Amanda H.*, 2017 IL App (3d) 150164, ¶ 34. "However, failure to

strictly comply with a provision of the Code does not require reversal when (1) a respondent fails

to object to alleged errors in the trial court and (2) respondent was not prejudiced." *In re Bonnie

S.*, 2018 IL App (4th) 170227, ¶ 33. We review whether a respondent's statutory rights have been

violated *de novo*. *Anne W.*, 2025 IL App (4th) 241257, ¶ 22.

¶ 38            Section 3-810 of the Code provides:

                "Before disposition is determined, the facility director or such other person

        as the court may direct shall prepare a written report including information on the

        appropriateness and availability of alternative treatment settings, a social

        investigation of the respondent, a preliminary treatment plan, and any other

        information which the court may order. The treatment plan shall describe the

        respondent's problems and needs, the treatment goals, the proposed treatment

        methods, and a projected timetable for their attainment." 405 ILCS 5/3-810 (West

        2024).

The purpose of section 3-810 "is to provide trial judges certain information necessary for

determining whether an individual is subject to involuntary admission to a mental health facility." *In re Robinson*, 151 Ill. 2d 126, 133 (1992).

¶ 39 "Where a respondent fails to object to the absence of a predispositional report, strict compliance with section 3-810 is required only when the legislative intent cannot otherwise be achieved." *Robinson*, 151 Ill. 2d at 134. In such situations, "oral testimony containing the information required by the statute can be an adequate substitute for the presentation of a formal, written report prepared by the facility director or some other person authorized by the court." *Robinson*, 151 Ill. 2d at 134. However, "strict compliance is only excused where counsel for respondent fails to object." *In re E.L.*, 316 Ill. App. 3d 598, 607 (2000). Where counsel objects to the absence of a written report, oral testimony cannot satisfy section 3-810 of the Code. *E.L.*, 316 Ill. App. 3d at 607; see *In re Scott A.*, 2025 IL App (4th) 250435-U, ¶¶ 16, 20 (finding strict compliance with section 3-810 was necessary because respondent's counsel objected to the lack of a predisposition report).

¶ 40 "The function of the objection is, first, to signify there is an issue of law, and secondly, to give notice of the terms of the issue." *People v. Trefonas*, 9 Ill. 2d 92, 98 (1956). Failure to make a proper and timely objection constitutes a forfeiture of the right to object. *Trefonas*, 9 Ill. 2d at 98; *People v. Bean*, 17 Ill. App. 3d 377, 382 (1974). To be timely, an objection must be made "as soon as the grounds for the objection become apparent." *Total Staffing Solutions, Inc. v. Staffing, Inc.,* 2023 IL App (1st) 220533, ¶ 47.

¶ 41 A timely objection is necessary to allow the non-objecting party a reasonable opportunity to correct the alleged deficiency. See *People v. Hopson*, 2012 IL App (2d) 110471, ¶ 18. Failure to timely object deprives a party of the opportunity to cure the alleged defect. *Hopson*, 2012 IL App (2d) 110471, ¶ 18. Thus, a party who fails to object until after the close of evidence

forfeits the objection. See *Hopson*, 2012 IL App (2d) 110471, ¶ 18 (stating that defendant was " 'sandbagging' the State by failing to give it the opportunity to cure the alleged defect and attempting to succeed on a procedural technicality" where defense counsel did not object to a witness's testimony until "arguments after the court closed the evidence"); see also *Schaffer v. Dorsey*, 70 Ill. App. 2d 390, 393-95 (1966) (holding that the defense counsel's objection to the testimony of a witness was untimely where it was made after the plaintiff rested his case).

¶ 42　　　　Here, respondent's counsel did not object to the lack of a predisposition report during the State's case-in-chief but, rather, asserted for the first time in closing argument that "there is no sufficient predisposition report." Counsel's "objection" was untimely because it was made after the close of evidence and denied the State the opportunity to cure the alleged deficiency. See *Hopson*, 2012 IL App (2d) 110471, ¶ 18; *Schaffer*, 70 Ill. App. 2d 390.

¶ 43　　　　Because respondent did not timely object to the lack of a predisposition report, strict compliance with the statute was not required. See *Robinson*, 151 Ill. 2d at 134. As such, oral testimony containing the information required by the statute could serve as an adequate substitute for the presentation of a formal, written report. See *Robinson*, 151 Ill. 2d at 134.

¶ 44　　　　The State asserts that Dr. Sanchez's testimony, alone or in conjunction with respondent's medical records, was sufficient to meet the requirements of section 3-810. Respondent does not dispute the State's contention but asserts that Dr. Sanchez's testimony is "irrelevant" because a written report was required. Here, counsel failed to timely object, so a written report was not required. See *Robinson*, 151 Ill. 2d at 134. Additionally, respondent has forfeited any argument that Dr. Sanchez's testimony did not meet the requirements of section 3-810 by failing to raise that issue in his appellate brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("[P]oints not argued are forfeited."). Thus, the trial court did not err in finding that the

evidence presented at the hearing satisfied section 3-810 of the Code.

¶ 45                              D. Incomplete Petition

¶ 46        Respondent next argues that the petition for involuntary admission was incomplete because it did not provide information about the peace officers who transported him to Illini Community Hospital or Blessing Hospital. He alternatively contends that his counsel was ineffective for failing to raise this issue at the involuntary admission hearing. The State responds that the petition was complete because it stated that no officers transported respondent to any hospital and respondent presented no contradictory evidence at the hearing.

¶ 47        Section 3-606 of the Code states as follows:

> "A peace officer may take a person into custody and transport him to a mental health facility when the peace officer has reasonable grounds to believe that the person is subject to involuntary admission on an inpatient basis and in need of immediate hospitalization to protect such person or others from physical harm. Upon arrival at the facility, the peace officer may complete the petition under section 3-601. If the petition is not completed by the peace officer transporting the person, the transporting officer's name, badge number, and employer shall be included in the petition as a potential witness as provided in section 3-601 of this Chapter." 405 ILCS 5/3-606 (West 2024).

"In determining the requirements of a statute and whether a respondent's statutory rights have been violated, our review is *de novo*." *Amanda H.*, 2017 IL App (3d) 150164, ¶ 34.

¶ 48        Respondent concedes that he did not raise this issue in the trial court. "As a general rule, issues not presented to or considered by the trial court cannot be raised by the first time on review." *In re Barnard*, 247 Ill. App. 3d 234, 252 (1993). However, reviewing courts in

involuntary admission cases will address issues raised for the first time on appeal under a doctrine analogous to the plain error doctrine. *Barnard*, 247 Ill. App. 3d at 253. Under that doctrine, appellate courts will consider on appeal "issues that are readily apparent in the record though not brought to the attention of the trial court." *In re Riviere*, 183 Ill. App. 3d 456, 460 (1989).

¶ 49 Where the testimony at an involuntary admission hearing shows that a police officer transported the respondent to a mental health facility, the officer must either (1) complete a petition himself or (2) be identified on the petition by name, badge number, and employer. See *Amanda H.*, 2017 IL App (3d) 150164, ¶ 35; *In re Joseph P.*, 406 Ill. App. 3d 341, 348 (2010), *overruled on other grounds by Rita P.*, 2014 IL 115798. The omission of the transporting officer's name and contact information from a petition will not be presumed to be harmless. *Amanda H.*, 2017 IL App (3d) 150164, ¶ 35; *Joseph P.*, 406 Ill. App. 3d at 348.

¶ 50 In both *Amanda H.* and *Joseph P.*, there was abundant evidence presented at the involuntary admission hearing showing that the respondents were transported to mental health facilities by one or more police officers. See *Amanda H.*, 2017 IL App (3d) 150164, ¶ 35 (finding "ample evidence that police officers assisted in transporting the respondent to the hospital" based on testimony from the respondent, her brother, and the certifying physician); *Joseph P.*, 406 Ill. App. 3d at 348 (stating that "[t]his emergency commitment proceeding began when unidentified police officers transported respondent to Blessing Hospital in Quincy"). Here, no testimony was presented at the hearing about respondent being transported to any hospital by police, and the petition specifically indicated that the police did not transport respondent. Nevertheless, respondent asserts on appeal that "[t]he record reflects that [he] was picked up and transported to Illini Community Hospital and a petition was prepared by law enforcement at that time." He further asserts that he was "transported again by law enforcement to Blessing Hospital." Respondent cites

- 14 -

to his medical records, which were admitted into evidence at the hearing on the petition, as support for these contentions.

¶ 51        The first reference to "police" in respondent's medical records is contained in a document from Blessing Hospital titled "Behavioral Medicine History and Physical," dated April 16, 2025. The "sources of information" for that document were "[s]taff and review of chart (including information obtained from collaborative sources, referring physicians, reviewing external notes) and interview of patient." In the section titled "History of Presenting Illness," the document states, "Patient was brought in to Illini [C]ommunity Hospital emergency department for behavioral health evaluation on a petition initiated by the local police." Later in that section, respondent was described as "manic and delusional" and "states that he is employed by homeland security as an accountant and that the government is following him." The second reference to "police" is contained in a document titled "Psych Biopsychosocial History" from Blessing Hospital, dated April 15, 2025. The "Chief Complaint" section of that document states: "The patient presented to the [emergency department] with police for a behavioral health evaluation."

¶ 52        Neither of these references reliably indicate that respondent was transported by police to Blessing Hospital, the mental health facility where respondent was being treated when the petition for involuntary admission was filed. Rather, the first reference to "police" stated that respondent was brought by police to "Illini [C]ommunity Hospital emergency department for behavioral health evaluation." The second reference makes no mention of a hospital but uses almost identical language as the first reference, stating respondent came to the emergency department "with police for a behavioral health evaluation," suggesting that it is describing the same event as the first. Additionally, the facts contained in respondent's medical records do not appear to be accurate because the record dated April 16, 2025, stated that a "petition [was] initiated

by the local police." However, there is no evidence that any petition was filed by police. Rather, the petition for involuntary admission was filed by respondent's father, David, who denied that a peace officer transported defendant "to the mental health facility."

¶ 53　　　　Additionally, the two statements in respondent's medical records constitute inadmissible hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Hearsay is generally not admissible unless an exception applies. See Ill. R. Evid. 802 (eff. Jan. 1, 2011). One exception to the hearsay rule is for "[s]tatements made for the purposes of medical treatment, or medical diagnosis in contemplation of treatment, and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Ill. R. Evid. 803(4) (eff. Jan. 25, 2023). "[E]ven if a document is admissible under a hearsay exception, any hearsay contained within that document must also fall within a hearsay exception to be admissible." *In re A.S.*, 2020 IL App (1st) 200560, ¶ 26.

¶ 54　　　　In this case, respondent's medical records were generally admissible as an exception to the hearsay rule, pursuant to Illinois Rule of Evidence 803(4). However, the statements in respondent's medical records about who transported respondent to the hospital were not admissible as a hearsay exception because they were not related to respondent's diagnosis and treatment. See *People v. Oehrke*, 369 Ill. App. 3d 63, 70 (2006) (finding that a victim's identification of her attacker to medical personnel did not fall within "the medical diagnosis and treatment hearsay exception").

¶ 55　　　　Furthermore, there was no testimony or evidence presented at the hearing on the petition to establish the source of the statements respondent relies on in his appeal. According to

the records themselves, that information could have come from respondent, who was "delusional" and believed he worked for "homeland security."

¶ 56        Here, respondent provided no direct evidence or testimony that he was transported by police to a mental health facility. Thus, it is not "readily apparent from the record" that a violation of section 3-606 occurred, and, as such, we will not reverse the involuntary admission order on that basis. See *Riviere*, 183 Ill. App. 3d at 460.

¶ 57        Respondent also argues that his counsel's failure to object to the petition amounted to ineffective assistance of counsel. Respondents facing involuntary admission have the right to the effective assistance of counsel. *In re Marcus S.*, 2022 IL App (3d) 160710, ¶ 34. To establish ineffective assistance, a respondent must show (1) that his counsel's performance was deficient and (2) counsel's errors were so prejudicial as to deprive the respondent of a fair hearing. *Marcus S.*, 2022 IL App (3d) 160710, ¶ 34. Counsel's failure to object to obvious deficiencies in a petition can amount to ineffective assistance. See *Marcus S.*, 2022 IL App (3d) 160710, ¶ 36 (ruling that the respondent's counsel's failure to object to the absence of information about the respondent's family in an involuntary admission petition amounted to ineffective assistance of counsel).

¶ 58        Where a petition for involuntary admission is facially deficient, counsel may be ineffective for failing to raise this issue at the involuntary admission hearing. See *Marcus S.*, 2022 IL App (3d) 160710, ¶ 36. However, the petition in this case was not deficient on its face because David denied that a peace officer transported respondent "to the mental health facility." Because a petitioner is required to include identifying information about a peace officer in a petition only if an officer transported the respondent to a mental health facility and the petition in this case indicated that no peace officer transported respondent, no information about a peace officer appeared necessary. Furthermore, as explained above, respondent presented no evidence at the

hearing about being transported by police to any mental health facility. Under these circumstances, respondent has failed to establish that his counsel was deficient for failing to argue that the petition violated section 3-606 of the Code.

¶ 59                                                        III. CONCLUSION

¶ 60                    For the reasons stated, we affirm the trial court's judgment.

¶ 61                    Affirmed.